**Lawrence Gottlieb, OSB #070869**
Email: lgottlieb@bpmlaw.com
**Jeremy R. Schulze, OSB #160528**
Email: jschulze@bpmlaw.com
Betts, Patterson & Mines, P.S.
701 Pike Street, Suite 1400
Seattle, WA 98101-3927
Telephone: 206-292-9988
Facsimile: 206-343-7053

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| Transportation Insurance Company;<br><br>             Plaintiff,<br><br>vs.<br><br>Central National Insurance Company of Omaha, Pacific Employers Insurance Company, and Acme Trading Company of Portland;<br><br>             Defendants. | NO.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>(Declaratory Relief Under 28 U.S.C. § 2201) |

## I.    **Introduction**

1.    This is an action for declaratory relief between Transportation, a primary insurer; two umbrella insurance carriers, Pacific Employers Insurance Company ("Pacific") and Central National Insurance Company of Omaha ("Central National"), collectively the "Insurer Defendants", and their mutual insured, Acme Trading Company of Portland ("Acme"). The action relates Acme's defense of claims relating to the Portland Harbor Superfund Site ("PHSS") in Oregon.

2.      Following the exhaustion of the limit of the Transportation policy, Pacific and Central National have unreasonably refused to defend Acme with respect to claims against Acme at the PHSS.

## II.      Transportation, Pacific, Central National, and Acme

3.      Plaintiff Transportation Insurance Company is an Illinois insurance company with its headquarters in Chicago, Illinois that, during all times relevant to this Complaint, transacted business in Oregon.

4.      Defendant Central National Insurance Company of Omaha ("Central National") is an insurance company organized under the laws of Nebraska with its principal place of business in Omaha, Nebraska.

5.      Defendant Pacific Employers Insurance Company ("Pacific") is an insurance company organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

6.      Acme Trading Company of Portland ("Acme") is an Oregon company with its principal place of business in Portland, Oregon.

7.      Acme was acquired by Manufacturing Management, Inc. in 1983.

8.      Acme was acquired by Calbag Metals Company ("Calbag") in 1995.

## III.      Jurisdiction and venue

9.      There is complete diversity of citizenship because Transportation is not a citizen of the same states as Pacific, Central National, or Acme.

10.      Acme claims to have incurred roughly $500,000 in unreimbursed defense costs relating to the underlying environmental site, and expects to incur additional defense costs in the future. Acme has claimed that either Plaintiff or the Insurer-Defendants are responsible for paying all past and all future defense costs.

11.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

Page 2 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

12.     Oregon is Acme's home and the location of the PHSS.

13.     Venue in this district is appropriate because a substantial part of the events or omissions giving rise to the claim took place in Oregon.

## IV.    Facts

### A.     The underlying Portland Harbor environmental claim against Acme

14.     In December, 1999, the Oregon Department of Environmental Quality sent a notice of claim letter regarding the PHSS, notifying ACME of potential environmental cleanup claims at the PHSS.  The letter requested that Acme perform a voluntary preliminary assessment of the property at 4927 NW Front Avenue, in Portland, Oregon.

15.     In March, 2009, the United States Environmental Protection Agency designated Acme as a Potentially Responsible Party ("PRP") for the cleanup of the PHSS.

16.     The March 2009 letter designated Acme as a PRP for the cleanup of the PHSS based on its alleged operations at three properties: 4927 NW Front Avenue, 12005 N. Burgard Road, and 2495/2550 NW Nicolai Street.

### B.     Acme's claim for insurance coverage from Transportation, Central National, and Pacific

17.     Acme tendered a claim for Acme's defense against environmental claims at the PHSS to Transportation, Pacific, and Central National in March, 2010.

18.     Acme claimed Transportation owed a defense under Transportation policy TBP 007 96 15 51 ("the Transportation policy"), and that Pacific and Central National owed a defense under the Pacific policy (Pacific policy number XMO 005696) and the Central National Policy (Central National Policy CNU 008276).

19.     Transportation responded to the tender of Acme's defense by letter in April 2010, reserved its rights, and sought more information from Acme

Page 3 – COMPLAINT FOR
DECLARATORY JUDGMENT

regarding the claim including the relationship Acme and the Acme claim had to Calbag, which was not a named insured on the Transportation policy.

20.    Pacific and Central National declined to accept Acme's tender of defense, claiming *inter alia* that their policies (1) owed no duty to defend prior to the exhaustion of the Transportation policy, and (2) that the Transportation policy was not exhausted.

21.    Transportation advised Acme that coverage under the Transportation policy had been exhausted by payment in a letter dated October 21, 2011.

22.    In response to Transportation's October 21, 2011 letter, Acme requested that Transportation provide documentation showing the exhaustion of the aggregate limit of the Transportation policy.

23.    Transportation provided Acme a letter on November 26, 2011, and attached a "loss run" for the Transportation policy, demonstrating the exhaustion of Transportation's aggregate limit.

24.    The loss run Transportation provided in 2011 was redacted, but disclosed information demonstrating exhaustion, including (i) the amount of paid loss on each claim, (ii) the total amount paid on all claims, (iii) the "date of loss" description for each claim, and (iv) the identity of the insured for each claim.

25.    On January 3, 2012, Pacific and Central National wrote to Acme claiming the information provided by Transportation was "insufficient" because of redactions in the loss run.

26.    Acme asked Pacific and Central National to describe what specific additional information was needed for to demonstrate Transportation's exhaustion by letter on February 23, 2012.

1248940.docx/042618 1358/8036-0111

27.    Pacific and Central National never identified the specific information it wanted from Transportation, but continued to insist on obtaining an "unredacted" loss run for the Transportation policy.

28.    On November 2, 2012, Acme wrote a letter to the Insurance Division of the Oregon Department of Consumer and Business Services regarding disputes with its insurers regarding Acme's defense of the PHSS matter.

29.    On December 4, 2012, Transportation wrote a letter to the Insurance Division of the Oregon Department of Consumer and Business Services, responding to issues raised by Acme and addressing the exhaustion of Transportation's policy limits.

30.    Transportation has provided Acme, Pacific, and Central National with un-redacted loss run information.

31.    On April 12, 2018, Pacific and Central National wrote to Acme denying a duty to defend Acme for the PHSS.

**C.    The Transportation Policy**

32.    The Transportation policy is attached as Exhibit 1 to this complaint.

33.    Pacific and Central National were in possession of a copy of the Transportation policy and its declarations by 2012.

34.    The Transportation policy was a commercial general liability insurance policy effective from October 1, 1979 to October 1, 1982.

35.    The Transportation policy was issued to General Metals of Tacoma and several other named insureds other than Acme.  Acme was added as a named additional insured to the policy by endorsement effective from March 31, 1981 to October 1, 1982.

36.    The Transportation policy provided property damage limits of $250,000 per occurrence and $250,000 in the aggregate.

Page 5 – COMPLAINT FOR
DECLARATORY JUDGMENT

37.    The Transportation policy provided coverage for its insureds against certain liability claims, including a duty to defend against those claims. These duties were limited by the following language in the Transportation policy:

> ...the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

38.    The Transportation policy contained form G-39200-B, which applied its aggregate limit "separately to each consecutive annual period."

39.    The Transportation policy contained language further defining the limits of the policy, stating in relevant part:

> III. LIMITS OF LIABILITY
>
> Regardless of the number of (1) Insureds under this policy, (2) persons or organization who sustain...property damage, (3) claims made or suit brought on account of... Property Damage to which this insurance applies, the company's liability is limited as follows:
>
> * * *
>
> ...the total liability of the company for all damage because of all ...Property Damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the schedule as "aggregate":
>
>      (1) all Property Damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including Property Damage for which liability is assumed under any Incidental Contract...

Page 6 – COMPLAINT FOR
DECLARATORY JUDGMENT

> Such aggregate limit shall apply separately (i) to the Property damage described in subparagraphs (1) and (2), (ii) with respect to each project away from premises owned by or rented to the Named Insured in subparagraphs (1) and (2).

40.  The Transportation policy rated premises and operations risks based on a schedule of insured premises and operations, and rated products risks based on a schedule of insured products.

41.  The Transportation policy rated specifically the operations of its named insured General Metals of Tacoma on the basis of remuneration.

42.  Acme was added as a "Named Insured" to the Transportation policy by endorsement effective March 31, 1981.

43.  The Transportation policy rated Acme's operations risks on a remuneration basis.

**D.    The Pacific and Central National Policies**

44.  The Pacific policy was effective from March 31, 1981 to October 1, 1981.

45.  The Pacific policy is an umbrella commercial general liability policy issued to be excess of the Transportation policy. Subject to the limitations that do not apply with respect to Acme's claim, the Pacific policy provides a duty to defend claims that would be covered by the Transportation policy but for the exhaustion of Transportation's limits.

46.  The Pacific policy provides per occurrence limits of $20 million.

47.  Pacific has had an obligation to defend Acme with respect to the PHSS claim under the Pacific policy since the claim was tendered.

48.  Central National policy was issued to Acme and was effective from October 1, 1981 to October 1, 1984.

49.  The Central National policy is an umbrella commercial general liability policy issued to be excess of the Transportation policy during the period from

Page 7 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

October 1, 1981 to October 1, 1982. Subject to the limitations that do not apply with respect to Acme's claim, the Central National policy provides a duty to defend claims that would be covered by the Transportation policy but for the exhaustion of Transportation's limits.

50.    The Central National policy provides per occurrence limits of $30 million.

51.    Central National has had an obligation to defend Acme with respect to the PHSS claim under the Central National Policy since the claim was tendered.

**E.    The other environmental claims against the Transportation policy**

52.    General Metals of Tacoma was listed as a Potentially Responsible Party for the environmental cleanup of the Strandley-Manning site in Purdy, Washington.

53.    In enforcement proceedings regarding the Strandley-Manning site, General Metals of Tacoma was designated as a Potentially Responsible Party based on alleged damage resulting from General Metals' operations beginning before 1980 and continuing up to and at least including the date of the enforcement action.

54.    The total cost of remediating the Strandley-Manning site was over $9 million.

55.    General Metals was listed as a Potentially Responsible Party with respect to the Commencement Bay Nearshore/Tideflats Superfund Site, a designated National Priorities List Site in Tacoma, Washington.

56.    General Metals was named as a Potentially Responsible Party (PRP) for the cleanup of the Commencement Bay Nearshore/Tideflats Superfund site based on allegations regarding damage from General Metals operations in Tacoma beginning before 1980 and continuing thereafter.

Page 8 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

57.     General Metals spent millions of dollars on remediation efforts within Commencement Bay. General Metals was one of two performing parties that conducted cleanup efforts in the "Head of the Hylebos" area of the Commencement Bay Nearshore/Tideflats Superfund Site.

58.     The total cost of remediation of the Commencement Bay site is over $20 million.

59.     Environmental claims were also asserted against General Metals and Leslie Sussman (another named insured under the Transportation policy) in connection with properties on Marine View Drive and Portland Avenue in Tacoma, Washington. General Metals and Leslie Sussman tendered these claims to Transportation.

60.     Acme has or may have interests adverse to General Metals and the Sussman's with respect to the Strandley-Manning site, the Commencement Bay site, and with respect to confidential information relating to those claims shared between Transportation as an insurer and General Metals or the Sussmans as Transportation's insureds.

**F.     The prior coverage action**

61.     In 1992, Transportation and several sister companies filed a declaratory judgment action against their insureds General Metals of Tacoma, Inc., Leslie Sussman, and Sophie L. Sussman, captioned *American Casualty Co. of Reading, et al., v. General Metals of Tacoma, Inc., et al*., 92-cv-5192B (W.D. Wash.). ("the General Metals case").

62.     In the General Metals case, Transportation sought a declaration regarding the scope of its insurance coverage under the Transportation policy with respect to environmental claims that had been asserted against General Metals and the

Page 9 – COMPLAINT FOR
DECLARATORY JUDGMENT

Sussmans. Other sister-company plaintiffs sought declarations regarding their rights and responsibilities under various excess policies.

63.     In 1994, Transportation entered into settlements with General Metals and the Sussmans, together with the other insurer-plaintiffs.

64.     In settling the General Metals case, Transportation and the other insurer-plaintiffs paid more than $5 million to Transportation's insureds General Metals and the Sussmans to compensate for their environmental cleanup liability.

65.     Following the settlements, the parties in the General Metals case agreed to dismiss their respective claims involving Transportation.

66.     The settlements in the General Metals case contain confidentiality provisions that prevent Transportation from voluntarily disclosing the contents of those settlements.

67.     Pacific and Central National were made aware of the Strandley-Manning claim when General Metals tendered the defense of that claim to Pacific and Central National.

68.     Pacific and Central National were made aware of the Commencement Bay claim when General Metals tendered the defense of that claim to Pacific and Central National.

**G.     Transportation's payments on other claims exhausted the policy limit**

69.     In the regular course of its business, Transportation tracks indemnity payments under the Transportation policy using a "loss run" system.

70.     The loss run for the Transportation policy shows that Transportation paid $761,000 in connection with an environmental claim at the Strandley-Manning site.

1248940.docx/042618 1358/8036-0111

71.     The loss run for the Transportation policy shows that Transportation paid $500,000 in connection with an environmental claim at the Commencement Bay site.

72.     Transportation has disclosed both the Transportation policy and loss run information for the Transportation policy to Pacific and Central National.

**H.      Pacific and Central National refuse to defend Acme**

73.     On April 12, 2018, Pacific and Central National's counsel expressed their position on the duty to defend in a letter to Acme's counsel.

74.     Pacific and Central National refuse to defend Acme despite the demonstrated exhaustion of Transportation's policy limits.

75.     Pacific and Central National's April 12, 2018 position that the Transportation policy had not exhausted was based on: (i) the amount of loss Transportation paid on claims in the loss run, (ii) the "date of loss" description for claims in the loss run, and (iii) the identity of the insured for claims in the loss run.

76.     Since 2011, Pacific and Central National have known (i) the total amount of loss Transportation paid; (ii) the identity of the insured; (iii) the "date of loss" description from redacted copies of Transportation's loss runs,.

77.     Pacific and Central National purport to have no knowledge of the insurance claims of Transportation's insureds General Metals and the Sussmans relating to the Strandley-Manning site, or Transportation's payments with respect to that claim.

78.     Pacific and Central National have, and have had, actual knowledge of the scope, nature, and extent of the claims discussed in the immediately preceding paragraph.

Page 11 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

79.    Pacific and Central National purport to have no knowledge of the insurance claims of Transportation's insureds General Metals and the Sussmans relating to the Commencement Bay Site, or Transportation's payments with respect to that claim.

80.    Pacific and Central National have, and have had, actual knowledge of the scope, nature, and extent of the claims discussed in the immediately preceding paragraph.

81.    Pacific and Central National's refusal to accept that the aggregate limit of Transportation's policy has been exhausted by payment is commercially unreasonable.

82.    Following the March 30, 2018 letter, Acme has expressed the intent to file suit against Transportation for an amount in excess of $500,000 in the event that Pacific and Central National do not assume Acme's defense with respect to the PHSS.

## V.    CLAIMS FOR RELIEF

### A.    FIRST CLAIM FOR RELIEF

(For a declaration regarding the exhaustion of the Transportation policy and Pacific and Central National's duties to defend.)

1.    Transportation re-alleges and incorporates herein the allegations stated in the above paragraphs.

2.    There is an actual and justiciable controversy concerning Pacific and Central National's duties to defend Acme with respect to the PHSS.

3.    Pursuant to Or. Rev. Stat. 28.010 et seq., Continental is entitled to a judicial determination concerning the scope and nature of Pacific and Central National's obligations to pay their legal and/or equitable share(s) of past, present, and future defense expenses arising out of the Portland Harbor Claim.

Page 12 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

4.      The aggregate limit of the Transportation policy is exhausted and Transportation has no duty to defend Acme.

5.      Pacific and Central National have, and have had, a duty to defend Acme with respect to the PHSS.

6.      Pacific and Central National's conduct has harmed Transportation by causing Acme to accuse Transportation of breaching its contractual duties to Acme.

**B.      SECOND CLAIM FOR RELIEF**

(Contribution from Defendants– ORS 465.480(4))

1.      Transportation re-alleges and incorporates herein the allegations stated in the above paragraphs.

2.      Pursuant to Or. Rev. Stat. 465.480(4), to the extent Transportation pays or agrees to pay costs Acme asserts are within the defense obligation of Transportation, Pacific, or Central National, Pacific and Central National are liable to pay Transportation 100% of those costs as the legal and/or equitable share(s) of past, present, and future defense expenses arising out of the Portland Harbor Claim.

3.      Pursuant to Or. Rev. Stat. 465.480(4), and the factors enumerated therein, Transportation is entitled to contribution from Pacific and Central National for prejudgment interest for Pacific and Central National's legal and/or equitable share(s) of past, present, and future defense expenses arising out of the Portland Harbor Claim.

## VI.    **PRAYER FOR RELIEF**

Wherefore, Transportation respectfully requests that this Court issue an Order:

Page 13 – COMPLAINT FOR
DECLARATORY JUDGMENT

1248940.docx/042618 1358/8036-0111

1.      Declaring that the aggregate limits of the Transportation policy for premises operations claims have been exhausted by payment;

2.      Declaring that Pacific and Central National have and had a duty to defend Acme in relation to the PHSS;

3.      Enjoining Pacific and Central National to assume the defense of Acme in relation to the PHSS;

4.      Enjoining Pacific and Central National to pay the reasonable and necessary past costs of Acme's defense in relation to the PHSS;

5.      Awarding Continental its attorney fees costs and disbursements in connection with this action; and

6.      Granting Continental such other and further relief as the Court may deem just and equitable.

DATED this 26th day of April 2018.

BETTS, PATTERSON & MINES, P.S.


By s/Lawrence Gottlieb
    Lawrence Gottlieb, OSB #070869
    lgottlieb@bpmlaw.com
    Jeremy Schulze, OSB #160528
    jschulze@bpmlaw.com
Attorneys for Plaintiff
Transportation Insurance Company

1248940.docx/042618 1358/8036-0111